UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARY TIPPEN,

    **Plaintiff,**

    v.                                              Case No. 04-C-970

WISCONSIN DEPARTMENT OF CORRECTION,
MATTHEW FRANK,
JODINE DEPPISCH,
CHARLES MORGAN,
SHARON ZUNKER,
S. G. MERESS, M.D.,
STEVEN A. MAGOLINE, M.D.,
HOLLY MEIER,
NURSE PEHLER,
NURSE KRUG,
NURSE HEBEL,
NURSE ROCKOW,
CORRECTIONAL OFFICER JOHNS,
CORRECTIONAL OFFICER ENGERSALL, and
CORRECTIONAL OFFICER PETERSON,

    **Defendants.**

## DECISION AND ORDER

The plaintiff, Mary Tippen, who is incarcerated at Taycheedah Correctional Institution (TCI), filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, on October 7, 2004. She was granted leave to proceed *in forma pauperis,* on November 16, 2004. The plaintiff alleges that she was denied medical care in violation of her Eighth Amendment rights, that her needs were not accommodated in violation of the Americans

with Disabilities Act, 28 U.S.C. §§12131-32, that she was denied access to the courts and that the defendants were negligent under Wisconsin law. Defendant Dr. Steven A. Magoline has filed a motion for summary judgment and a "Motion to Dismiss Plaintiff's Claims Against Defendant, Steven Magoline, M.D., for Plaintiff's Failure to Obey the Rules and Order of the Court to File a Response to Defendant's Summary Judgment Motion." The remaining defendants have filed a motion to dismiss. All of these motions will be addressed herein.

## I. DEFENDANTS' MOTION TO DISMISS

Defendants Wisconsin Department of Corrections, Matthew Frank, Jodine Deppisch, Charles Morgan, Sharon Zunker, Dr. S.G. Meress, Holly Meier, Nurse Pehler, Nurse Krug, Nurse Hebel, Nurse Rockow, Correctional Officer Johns, Correctional Officer Engersall and Correctional Officer Peterson have filed a motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. In support of their motion to dismiss, the defendants submitted the affidavit of John Ray, a Corrections Complaint Examiner (CCE) for the State of Wisconsin, along with various documents relating to the plaintiff's use of the Wisconsin Department of Corrections Inmate Complaint Review System (ICRS). In response to the defendants' motion, the plaintiff submitted a brief, her personal affidavit and the verified complaint with attached documents.

When ruling on a motion to dismiss under Rule 12(b)(6), the court must focus on the pleadings of the parties. If "matters outside the pleadings are presented to and not

2

excluded by the court" in connection with a motion to dismiss for failure to state a claim, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b).

Consideration of the verified complaint and attached documents alone would not require the court to convert the motion to dismiss to one for summary judgment. *See Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004) ("Attachments to the complaint become part of the complaint and the court may consider those documents in ruling on a motion to dismiss.") However, the parties have also submitted affidavits and documents outside of the complaint which are relevant to the motion to dismiss. Thus, the court must treat the defendants' motion as one for summary judgment. In such circumstances, however, a district court cannot properly rule on a motion for summary judgment without providing the opposing party a "reasonable opportunity" to contradict the material facts asserted by the movant. *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir. 1982). This means that a *pro se* prisoner who is a plaintiff in a civil action is entitled to receive notice of the consequences of failing to respond to a motion for summary judgment or to a motion to dismiss supported by affidavits. *Id.*

In this case, counsel for the defendants provided the plaintiff with the required notice statement as well as with copies of the text of Rule 56(e) and (f), Federal Rules of Civil Procedure and the text of Civil Local Rules 7.1, 56.1 and 56.2 (E.D. Wis.). A review

3

of the plaintiff's response to the defendants' motion and her affidavit reveals that she was fully aware that the defendants were relying on matters outside the pleadings. Indeed, the plaintiff, in her own affidavit, states that she is submitting the affidavit "in opposition to the defendants [sic] motion for Summary Judgment." (Tippen Aff. at ¶1.) Thus, the court finds that the plaintiff has been given notice and a fair opportunity to present counter-affidavits or other evidence in opposition to the defendants' motion. Accordingly, the defendants' motion to dismiss will be treated as one for summary judgment.

**A. Summary Judgment Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial-(1) the absence of a genuine issue of material fact, and (2) an entitlement to judgment as a matter of law-is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at

4

trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also, Celotex Corp.* 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleading themselves . . ."); Fed. R. Civ. P. 56(e) ("When a summary judgment motion is made and supported as provided in [Rule 56(c)], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavit or otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial"). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322 (emphasis added).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

**B. Relevant Undisputed Facts**

The plaintiff suffered a stroke prior to her incarceration in 1997. (Complaint at 7). While "still suffering post stroke conditions," and "while confined to a wheel chair," the plaintiff was convicted of a felony and sentenced in May of 1997. *Id.* The plaintiff

5

avers that defendants Jodine Deppisch, Matthew Frank, and Charles Morgan denied her proper medical care, the use of her wheelchair, and placement in a handicapped cell at TCI or Dodge Correctional Institution. *Id.*, at 8. When brought to their attention, the defendants refused to correct the matter. *Id.* The plaintiff also states that TCI does not have handicapped access to the prison law library or the dining hall. *Id.*

According to the allegations of the complaint, the plaintiff suffered a number of falls while incarcerated at TCI. *Id.* at 8. On June 28, 2002, the plaintiff "fell down in the shower due to post stroke conditions and no handicap showers or rails in the showers." *Id.* Defendant Nurses Pehler and Krug refused to help the plaintiff off the floor. *Id.* Correctional officers eventually picked her up and carried the plaintiff to her cell. *Id.*

As a result of the June 2002 fall, the plaintiff alleges that she "suffered a fracture in her spine" and "retropulsion of the bone." *Id.* at 8-9. The plaintiff was given Tylenol and seen several days later at St. Agnes Hospital by Dr. David Matthews, a non-defendant physician who ordered medications, therapy, and a wheelchair. *Id.* at 9. Tippen contends that defendants Sharon Zunker, Holly Meier, Pehler, Krug, Nurses Hebel and Rockow, and Dr. S. G. Meress have refused to treat the plaintiff "medically," and refused to follow the plan ordered by Dr. Matthews. *Id.* As a result of the lack of treatment, the plaintiff "suffers in excruciating chronic back pain, and diffuse Osteophyteldisc bulging at L2 and L3." *Id.* at 9.

6

On or about January 31, 2003, the plaintiff fell a second time. *Id.* at 8. She states that this occurred because "the defendants" removed her wheelchair. *Id.* The plaintiff states that she fell a third time on or about June 26, 2003, because defendant Deppisch, "her employees, agents and custodians," refused to allow the plaintiff to use her wheelchair out of her cell. *Id.* at 10. The plaintiff asserts that, as a result of this fall, she "fractured her neck and skull, broke her nose, and the humeral head and neck." *Id.* Thereafter, the plaintiff was taken to Dodge Correctional Institution and was treated with Tylenol and an ice bag. *Id.* at 10-11.

The plaintiff states that she continues to suffer from her injuries. *Id.* at 13. She also continues to fall down due to the lack of the use of her wheelchair. *Id.* She alleges that defendants Meress and Dr. Steven A. Magoline have "refused to renew the plaintiffs [sic] medication, provide the plaintiff with special needs permits, denied the plaintiff treatment to repair her back, denied the plaintiff physical therapy and caus[ed] her to suffer in great pain by their actions." *Id.* at 10.

The plaintiff states that "[e]very day while at the TCI the plaintiff was refused her medication, food or given her medications hours late by both medical staff defendants and correctional staff defendants, watching her suffer in agonizing pain." *Id.* at 10. She contends that she is "bed ridden and cannot physically attend any medication call lines, and relies on medical staff and correctional staff . . . to bring the medication to her cell block to

7

be dispensed to her by her block correctional officer at its proper time on time. This is not being done." *Id.* at 13.

She states that, on April 30, 2004, the plaintiff requested her prescribed medication at 4:40 a.m., but the correctional officers (who are also alleged to have denied the plaintiff her daily meals) did not provide the medication until 8:00 p.m. *Id.* at 10. The plaintiff states that, because of the delayed dispensation of her medications, she made "legitimate purchases" of Tylenol from the TCI canteen. *Id.* at 12. She contends that she was also denied her medication on July 24, 2004, when defendant Correctional Officer Peterson did not give the plaintiff her medication for her fractured back as scheduled at 3:00 a.m. *Id.* Allegedly, she activated her "emergency call switch," but defendant Peterson stated, "I'm not going to feed your addiction," and left. *Id.* The plaintiff called again an hour later, but no one responded. *Id.* The plaintiff began banging on her cell door, and was consequently issued a conduct report. *Id.* at 12 and Exhibit I.

The plaintiff also complains that defendant Correctional Officers Johns, Peterson, and Engersall ordered the plaintiff to work or be placed in segregation despite the facts that she has a medical order which states "NO WORK." *Id.* at 11.

Lastly, the plaintiff contends that, on or about July 16, 2004, defendants Johns and Engersall refused to allow her access to the library while in her wheelchair. *Id.* The plaintiff wanted to work on post-conviction petitions at the TCI law library. *Id.* The plaintiff states that she cannot walk without assistance and was forced to "pull herself across the room

8

by a counter." *Id.* As a result, she apparently fell and injured herself. *Id.* Defendants Johns and Engersall yelled at the plaintiff to "get the FUCK UP OR GO TO THE HOLE." *Id.* The defendants issued the plaintiff a conduct report and she was "sanctioned to a five day loss of law library access," causing her to "miss her filing post conviction relief deadline." *Id.*

At the time the plaintiff filed the instant lawsuit, she had filed 89 inmate complaints since February 2003, but had exhausted only six of them. (Ray Aff. Ex. A.) Two of the exhausted complaints – Inmate Complaint Nos. TCI-2005-4228 and TCI 2005-5330 – were filed after the plaintiff filed the instant lawsuit. *Id.* It is undisputed that Inmate Complaint No. TCI-2004-341 has been fully exhausted but is unrelated to plaintiff's claims in this lawsuit. *Id.* Inmate Complaint No. TCI-2004-341 was a group complaint relating to the availability of greeting cards and envelopes in the prison canteen. *Id.*, at Ex. B. It is also undisputed that Inmate Complaint No. TCI-2004-4043 has been fully exhausted but is unrelated to the plaintiff's claims in this lawsuit because it concerns property damage after a room search. *Id.*

Tippen filed Inmate Complaint No. TCI-2004-4535 on February 4, 2003. *Id.*, at Ex. C. In that complaint, she complained about the following events that occurred on January 27, 2003:

> Also I had suffered a fractured right shoulder . . . I proceeded to go to my room at 2 o'clock movement, I got up from my chair maybe a few steps forward got dizzy and light-headed, the next thing I knew I was falling backwards and I ended up on the floor. Officer Sturba came to help me out. I hurt my hip very badly. I had a stroke and am paralyzed on my left side. I could not stand back on my feet on my own. Officer Sturba knew that I hurt myself falling because

9

> I told her as much. Officer Sturba began to pull me by my right side, the "working" side. I still could not give any assistance. All I had to use was the paralyzed side (left), I should have been allowed to stay down until the nurse came to assist me. I still have no idea if I have something broken or fractured. As of now, I am in considerable pain and cannot hardly even raise from my bunk for count or other purposes. I do the best I can.

*Id.* The complaint was reviewed and investigated by the inmate complaint examiner (ICE) who recommended that it be dismissed. *Id.* The ICE Reviewer adopted the recommendation. *Id.* Tippen then filed an appeal of that decision with the Corrections Complaint Examiner (CCE) in which she stated:

> I was complaining that I had hurt myself when I fell after Officer Sterba helped me up, I only saw the nurse once not twice as the ICE decision states. I told the nurse I wanted to have some x-rays to see if I broke or fractured anything on my body when I fell, because I hurt my hip so bad. I never received x-rays.

*Id.* The CCE then recommended dismissal of the appeal:

> In agreement with the report of the Institution Complaint Examiner, and as I note the complaint has been reviewed and decided by the BHS regional nursing coordinator, it is recommended this complaint be dismissed. It would appear from the complainant's [sic] that she is attempting to change the nature of her complaint. If she is concerned about trauma or other effects of a fall, she should initiate appropriate contact with HSU.

*Id.* Tippen did not file any complaints concerning the alleged trauma or other effects of the January 27, 2003, fall as suggested by the CCE.

On August 13, 2004, Tippen filed Inmate Complaint No. TCI-2004-26459 which states: "I was denyed [sic] Proposine Pain Pill at 4:00 p.m. Medication pass as it is prescribed." *Id.*, at Ex. D. The ICE investigated the complaint and recommended dismissal

10

because the records showed that Tippen had received her medication on the date in question. *Id.* Tippen appealed to the CCE who recommended dismissal on the same grounds. *Id.* That recommendation was adopted by the Secretary's designee. *Id.*

## C. Discussion

The defendants argue that the plaintiff failed to exhaust her administrative remedies in connection with the claims raised in her complaint. The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999)). Failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

As a preliminary matter, the plaintiff argues that she is not required to exhaust her administrative remedies because the exhaustion requirement is only applicable to "suits relating to prison conditions" and not an action such as hers "which is a tort claim for personal injury." In addition, she argues that she should be excused from the exhaustion requirement because (1) she was "deprived of these procedures . . . and beaten by staff for

11

writing the grievances" (Plaintiff's Brief in Opposition at 9), and (2) exhaustion would be futile.

Contrary to the plaintiff's assertion, the exhaustion requirement set forth in §1997e(a) applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, "complaints about medical treatment in prison are complaints about 'prison conditions'" *Witzke*, 376 F.3d at 751 (quoting *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 534 (7th Cir. 1999). Thus, the exhaustion requirement of the PLRA is applicable to the plaintiff's action.

The plaintiff also argues that her efforts to pursue administrative remedies were thwarted by prison officials. The Court of Appeals for the Seventh Circuit has recognized that administrative remedies may not be "available" to a plaintiff where prison employees prevent an inmate access to an administrative remedy. *See Dale*, 376 F.3d at 656 ("If prison officials fail to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedies.") Here, however, the plaintiff does not point to any evidence showing that the actions of prison officials interfered with her ability to pursue administrative remedies with respect to the claims in her civil complaint. While she states in her brief and affidavit that she has received conduct reports and was subjected to disciplinary segregation for filing grievances, she does not provide any evidence to show that these grievances related to the claims in this case. Moreover, Tippen admitted that she was

12

able to pursue grievances and appeals despite the disciplinary action imposed on her. (Plaintiff's Brief in Opposition at pp. 9-10.) The fact that the plaintiff has managed to file 89 inmate complaints and exhaust six of them also undermines her contention that she has been "deprived of the procedures." On this record, the court finds that no reasonable jury could conclude that the administrative remedies were unavailable to the plaintiff.

Finally, the plaintiff argues that it would have been futile to utilize the inmate complaint review system. This argument is without merit because the Court of Appeals for the Seventh Circuit has held that there is no futility exception to the exhaustion requirement under the PLRA. *See Perez*, 182 F.3d at 537.

Having concluded that the exhaustion requirement of the PLRA applies to the plaintiff's action, the court must now determine whether that requirement was met. The plaintiff states generally in her brief in opposition to the defendants' motion that she "has exhausted the administrative remedies made available to her" but does not identify any inmate complaints which relate specifically to the claims advanced in her complaint. (Plaintiff's Brief in Opposition at 5.) A review of the documents submitted by the parties reveals that of the 89 inmate complaints filed by the plaintiff, only six have been exhausted. Two of those complaints – Inmate Complaint Nos. TCI-2005-4228 and TCI 2005-5330 – were filed <u>after</u> the commencement of this lawsuit and are not relevant for purposes of establishing whether the defendant exhausted her administrative remedies prior to filing the instant lawsuit. It is undisputed that another two– Inmate Complaint Nos. TCI-2004-341and

13

TCI-2004-4043 – relate to claims which are not advanced by the plaintiff in the present lawsuit.

The plaintiff has also exhausted her administrative remedies with respect to Inmate Complaint No. TCI-2003-4535. This inmate complaint was filed in connection with a fall that occurred on January 27, 2003. In her civil complaint, the plaintiff alleges that "[o]n or about January 31, 2003, the plaintiff had another fall do [sic] to the defendants removing her wheel chair." (Complaint at 8 ¶ 29.) The defendants assert that Inmate Complaint No. TCI-2003-4535 is not related to the plaintiff's claim concerning her fall that occurred in late January 2003 because it concerns the actions of "Officer Sturba" who is not a named defendant in this action and does not allege that her fall was caused by the defendants' removing her wheelchair. The plaintiff does not contest this assertion. Thus, the court finds that while the claims advanced in Inmate Complaint No. TCI-2003-4535 were fully exhausted, those claims do not relate to any of the issues pursued by the plaintiff in the present action and therefore, cannot satisfy the exhaustion requirement.

The administrative remedies were also exhausted as to Inmate Complaint No. TCI-2004-26459 which relates to a request for medication on August 13, 2004. The defendants argue that the plaintiff's civil complaint does not allege negligence on the part of the defendants or a violation of the plaintiff's civil rights or the ADA in connection with the denial of her medication on August 13, 2004. Again, the plaintiff does not challenge this assertion. Hence, because this inmate complaint is unrelated to the issues in the plaintiff's

14

civil action, it cannot satisfy the requirement that she exhausted her administrative remedies as to those issues.

It has not been shown that the plaintiff exhausted her administrative remedies with respect to any other inmate complaints. Thus, on the record before me, I find that no reasonable trier of fact could conclude that the plaintiff has exhausted her administrative remedies with respect to the claims set forth in her complaint. Therefore, the defendants' motion for summary judgment will be granted.

## II. DEFENDANT MAGOLINE'S MOTION FOR SUMMARY JUDGMENT

On August 4, 2005, defendant, Dr. Steven Magoline, filed a motion for summary judgment along with the requisite supporting materials. Pursuant to Civil Local Rule 7.1(c), the plaintiff was required to file a response, if any, no later than September 3, 2005. The plaintiff failed to file a timely response and instead, on September 12, 2005, filed a motion for the enlargement of time seeking an extension of the deadline to file her response to September 26, 2005. By order of October 5, 2005, the court granted her motion for an extension of time and directed the plaintiff to file a response to the defendant's motion for summary judgment within 15 days. The plaintiff was also warned that if she failed "to file a response to the defendant's motion within this time period, her action may be dismissed with prejudice pursuant to Civ. L.R. 41.3 (E.D. Wis.) and Fed. R. Civ. P. 41(b) . . . ." (October 5, 2005, order at 3.)

15

Court records show that, to date, the plaintiff has not filed a response to the defendant's motion for summary judgment. On October 27, 2005, the defendant's filed a "Motion to Dismiss Plaintiff's Claims Against Defendant, Steven Magoline, M.D., for Plaintiff's Failure to Obey the Rules and Order of the Court to File a Response to Defendant's Summary Judgment Motion." Rather than resolve the matter pursuant to the defendant's latest motion, the court will decide the defendant's unopposed motion for summary judgment on the merits.

**A. Summary Judgment Standard**

The summary judgment standard set forth earlier in this decision in connection with the motion for summary judgment filed by the other defendants is applicable to defendant Magoline's motion for summary judgment and will not be restated. In addition, the record shows that defendant Magoline filed proposed findings of fact in compliance with Civil Local Rule 56.2(a) (E.D. Wis.). The plaintiff has not responded to defendant Magoline's motion or to his proposed findings of fact. The consequences for failure of the nonmovant to submit and a response to a movant's proposed findings of fact is clear under Civil Local Rule 56.2(e): the court must conclude that there is no genuine issue to those factual findings. Consequently, I find that the facts, as identified by defendant Magoline in his proposed findings of fact are undisputed. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-922 (7th Cir. 1994) ("We have . . . repeatedly upheld the strict enforcement of [local rules regarding summary judgment obligations], sustaining the entry of summary

16

judgment when the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

Based on the above, the undisputed facts are as follows. Defendant Magoline is an orthopedic surgeon who practices at the Fond du Lac Regional Clinic. (Defendant's Proposed Finding of Fact ["DPFF"] at ¶1.) Defendant Magoline provided care and treatment to the plaintiff for her right humerus fracture on June 28, 2002, July 15, 2002, and August 6, 2002. (DPFF at ¶5.) The plaintiff's complaint alleged an Eighth Amendment denial of medical care claim against defendant Magoline pursuant to 42 U.S.C. § 1983. (DPFF at ¶2.) The complaint also alleged a state claim of medical malpractice against defendant Magoline arising from the care and treatment of her shoulder fracture. (DPFF at ¶6.)

Defendant Magoline is a private practice physician and not a state agent. (DPFF at ¶4.) The deadline for discovery pursuant to the Scheduling Order of April 6, 2005, was July 6, 2005. (DPFF at ¶7.) The plaintiff does not have a medical expert to support her medical claims against defendant Magoline. (DPFF at ¶8.)

**B. Discussion**

Defendant Magoline argues that he is entitled to summary judgment on plaintiff's Eighth Amendment claim because he is not a state actor. In order to establish liability under 42 U.S.C. §1983, a plaintiff must demonstrate: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo*, 446

17

U.S. 635, 640 (1980). Private citizens are not subject to suit under §1983 unless they conspire or actively participate with a public official to deprive someone of a constitutional right. *See Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (*citing Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). The undisputed evidence shows that defendant Magoline is a private practice physician and not a state actor. Moreover, there is no evidence in the record to show that defendant Magoline conspired with any of the other defendants or any state official to deprive him of his constitutional rights. Therefore, defendant Magoline is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

Defendant Magoline also argues that he is entitled to summary judgment on the state law medical malpractice claim because the plaintiff does not have any medical expert testimony to opine that he was negligent or that any such alleged negligence caused her injury as required under Wisconsin law. By order of November 16, 2004, the court determined that it had supplemental jurisdiction over the plaintiff's state law negligence claims.

Under Wisconsin law, in order to hold a defendant liable in a medical malpractice claim, "the burden is upon the plaintiff to show that the physician failed in the requisite degree of care and skill. That degree of care and skill can only be proved by the testimony of experts. " *Froh v. Milwaukee Medical Clinic, S.C.*, 85 Wis. 2d 308, 317 (Ct. App. 1978). In unusual cases, common knowledge of laymen may afford a basis for finding negligence." *Christianson v. Downs*, 90 Wis. 2d 332, 338 (1979). For instance, "laymen

18

may be able to conclude that there was negligence, without expert testimony, where a sponge or surgical instrument was left in an incision or where the wrong organ or other body part was removed in surgery." *Id.* In addition, expert testimony is required to prove that the alleged negligence was a proximate cause of the alleged damages. *Treptau v. Behrens Spa*, 247 Wis. 438, 444 (1945).

On the record before the court, there is no expert testimony showing that defendant Magoline failed in the requisite degree of care and skill in connection with his treatment of the plaintiff's shoulder fracture or that such negligence was a proximate cause of the alleged damages. Further, the plaintiff has not provided evidence to suggest that this is one of those unusual situations where a common layman could afford the basis for finding negligence. In the absence of any proof of negligence against defendant Magoline, the court will grant defendant Magoline's motion for summary judgment on the state law medical malpractice claim.

Having determined that defendant Magoline's motion for summary judgment will be granted, the court will deny the "Motion to Dismiss Plaintiff's Claims Against Defendant, Steven Magoline, M.D., for Plaintiff's Failure to Obey the Rules and Order of the Court to File a Response to Defendant's Summary Judgment Motion," as moot.

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket No. 33) be and hereby is **granted**.

**IT IS FURTHER ORDERED** that defendant Magoline's motion for summary judgment (Docket No. 62) be and hereby is **granted**.

**IT IS FURTHER ORDERED** that defendant Magoline's "Motion to Dismiss Plaintiff's Claims Against Defendant, Steven Magoline, M.D., for Plaintiff's Failure to Obey the Rules and Order of the Court to File a Response to Defendant's Summary Judgment Motion," (Docket No. 82) be and hereby is **denied, as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action in accordance with this decision and order.

Dated at Milwaukee, Wisconsin this 16th day of November, 2005.

        **SO ORDERED,**

        **s/ Rudolph T. Randa**
        **HON. RUDOLPH T. RANDA**
        **Chief Judge**